UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| DONNA L. MAWK, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Case No. 1:17-cv-00427-TWP-DLP |
| NANCY A. BERRYHILL[1], Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Donna L. Mawk ("Mawk") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her Application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act") as well as Title II[1]. For the following reasons, the Court **REMANDS** the decision of the Commissioner for further consideration.

### I. BACKGROUND

**A. Procedural History**

On August 26, 2013, Mawk filed an application for disability benefits under Title II and SSI, alleging a disability onset beginning May 28, 2013 in both applications. (Filing No. 13-2 at 17.) Her claims were initially denied on November 25, 2013, and upon reconsideration on January 24, 2014. *Id.* at 17. Mawk timely filed a request for a hearing, which was held on June 11, 2015,

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits or Supplemental Security Income. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted decisions.

via a video-conference, before Administrative Law Judge Roxanne Fuller (the "ALJ"). The ALJ issued a decision on October 21, 2015, denying Mawk's applications. *Id.* at 32.

On November 19, 2015, Mawk then requested review by the Appeals Council. *Id.* at 13. On December 16, 2016, the Appeals Council denied her request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. *Id.* at 2. On February 10, 2017, Mawk filed this action for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). (Filing No. 1.)

**B.  Factual Background[2]**

At the time of Mawk's alleged onset date in 2013, she was fifty (50) years old. She has a high school education. (Filing No. 15 at 5.) Her past relevant work included collections agent, home health aide, automobile assembler, a forklift operator, and a machine operator. *Id.* Mawk alleges the following impairments: severe depression, anxiety, post-traumatic stress disorder ("PTSD"), diabetic nerve damage, neuropathy, diabetes, asthma, chronic obstructive pulmonary disease, and high blood pressure. *Id.* at 5. The Court finds no reversible error with the ALJ's consideration of Mawk's physical impairments, therefore the factual background will discuss only Mawk's mental impairments. Specifically, Mawk's mental health diagnoses include attention deficit hyperactivity disorder ("ADHD"), PTSD, bipolar II, and avoidant personality disorder. *Id.* at 9.

On July 7, 2013. Mawk underwent a psychiatric evaluation at Meridian Services due to having problems with sleep and fatigue throughout the day. (Filing No. 13-7 at 11.) She was diagnosed with Dysthymic Disorder and PTSD. Her treatment plan included weekly individual

---

[2] The parties' briefing contains detailed factual accounts of the relevant medical background. The Court recounts here only the facts relevant to the issues being appealed. Furthermore, the Commissioner stipulates to all facts in Mawk's Section IV, Statement of the Facts, with one exception agreed to by the parties relating to Mawk's diabetes varying between poor control, fair control, and controlled. (Filing No. 16 at 2.)

therapy for one hour per session, group therapy for up to three hours per session, and she was prescribed medication. (Filing No. 13-7 at 12.) Mawk was also assigned a global assessment of functioning ("GAF") of 52. *Id.* At the time of the evaluation, Mawk had been going to therapy off and on for twenty years and was on antidepressants. (Filing No. 15 at 5.)

On November 12, 2013, Dr. Kenneth McCoy ("Dr. McCoy") saw Mawk for a consultative examination by a social security examiner. (Filing No. 13-7 at 54.) Mawk reported that her emotional distress was accompanied by dysphoria, fatigue, anhedonia, hopelessness, sleep disturbances, increased anxiety, excessive worry, racing thoughts, and irritability. *Id.* at 55. She also reported that she left her last job due to not being able to get out of bed and get to work due to her depression. Dr. McCoy noted that based on his mental status examination, Mawk's depression and attention problems may interfere with her ability to attend to a simple, repetitive task continuously for a two-hour period. *Id.* at 56. Dr. McCoy also noted that Mawk's working memory and serial ability were below average. *Id.* at 57. He diagnosed her mental impairments as PTSD and Major Depression, recurrent. *Id.* Dr. McCoy assigned Mawk a GAF of 65.

Since 2012, Mawk has had ongoing issues with mental health treatment. (Filing No. 15 at 9.) Her symptoms include isolation, low motivation, forgetfulness, poor task completion, low self-esteem, distrust in relationships, socially inhibited, and sadness. *Id.* Even with ongoing therapy and medication, she still experiences anhedonia, thoughts of helplessness, hopelessness, crying spells, and an overall feeling of despair. Mawk's care plan includes several hours of weekly therapy sessions. (Filing No. 13-5 at 4-5.) Her symptoms fluctuate. At times she reports doing better, while at other times she becomes so panicked that she cannot drive to see her psychiatrist by herself. (Filing No. 15 at 9.)

Carol Childress ("Childress"), Mawk's treating therapist who works under the supervision of Mawk's treating psychiatrist, completed a mental impairment questionnaire based on her treatment relationship of weekly therapy sessions with Mawk for over a year. *Id.* at 10. Childress noted that Mawk's diagnoses included: ADHD, PTSD, Avoidant Personality Disorder, and a prior diagnosis of Bipolar II. ([Filing No. 13-14 at 73](#).) Mawk's psychiatric medications include Lamictal (100 mg), Concerta (54 mg), and Methylephenidate (10 mg). Childress' clinical findings indicated the severity of Mawk's mental impairments which include: significant trauma history which causes nightmares, reoccurring thoughts, changes in mood, persistent sadness, avoidance, and isolation. *Id.* Childress checked boxes identifying Mawk's symptoms which also included: recurrent and intrusive recollections of a traumatic experience which are a source of marked distress, paranoid thinking or inappropriate suspiciousness, easy distractibility, recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on the average at least once a week, bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes, and hyperactivity. ([Filing No. 13-14 at 74](#).) Childress noted that Mawk is seriously limited, but not precluded from, responding appropriately to changes in a routine work setting. Under the category of "Unable to Meet Competitive Standards" Childress checked that Mawk cannot maintain attention for a two-hour segment; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; or deal with normal work stress. *Id.* at 75.

Childress explained in the "notes section" that Mawk's ADHD poses limitations with carelessness; difficulty with organization and sustaining attention in activities; poor task completion skills; and easily distractible. *Id.* As a result of Mawk's PTSD she tends to be

4

hypervigilant, distrustful, isolating, and avoidant. Mawk is limited, but satisfactory with the ability to deal with the stress of semiskilled and skilled work and is unable to meet competitive standards with the ability to understand, remember, and carry out detailed instructions. *Id.* at 76. Clinical findings indicate that Mawk experiences varying degrees of marked and extreme difficulties in maintaining social functioning; extreme difficulties in maintaining concentration, persistence, or pace; and has experienced four or more episodes of decompensation within a twelve-month period, each of at least two weeks duration. *Id.* at 77. Childress noted that on average, Mawk would miss more than four days per month as a result of her impairments or treatment. *Id.* at 78.

On November 21, 2013, State agency consultative psychological consultant Kenneth Neville, Ph.D. ("Dr. Neville") evaluated Mawk. ([Filing No. 13-3 at 7](#).) On January 24, 2014, State agency consultative psychological consultant Joelle Larsen, Ph.D. ("Dr. Larsen") also evaluated Mawk. ([Filing No. 13-3 at 29](#).) Both consultants opined that Mawk's mental disorders were non-severe and had only a mild effect on her ability to perform activities of daily living, maintain social functioning, and maintain concentration, persistence, and pace.

At her hearing, Mawk testified that she cares for her four year old child (whom she recently adopted), but receives assistance from her mother, sister, and other (teenage) son to help her with childcare about three to four times a week. ([Filing No. 15 at 13](#).) She reported symptoms of depression including not wanting to do anything and spending at least half the of the day in her room with the door closed and lights out three days a week, including spending four days completely isolated. *Id.* Mawk has crying episodes two or three times a week. While on medication, she has been having anger outbursts three to four times a month usually directed at her older son, but sometimes strangers if she is out in public. Mawk experiences very violent and graphic nightmares on a near nightly basis from her PTSD, thus she takes a nap every day for three

5

to four hours because she does not wake up feeling rested. Mawk's son cleans the kitchen, and Mawk does the laundry and cooks simple one pot meals. *Id.* at 14. Mawk spends most of her days sitting in a chair and watching television.

**C.      The ALJ's Decision**

Using the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4), the ALJ ultimately concluded that Mawk was not disabled. ([Filing No. 13-2 at 25](#).) At step one of the analysis, the ALJ found that Mawk met the insured status requirements of the Act through December 31, 2016, and had not engaged in substantial gainful activity since May 28, 2013. *Id*. at 19. At step two, the ALJ found that Mawk had the following severe impairments: left hip replacement, obesity, diabetes, Morton's Neuroma, PTSD, bipolar disorder, and depression. The ALJ found Mawk's hypertension and hypercholestoralemia non-severe. At step three, the ALJ found that Mawk does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 20. The ALJ considered various listings, but ultimately found that Mawk did not meet any of them. [3] The ALJ concluded that Mawk had the residual functional capacity ("RFC") to perform light work except occasional climb ramps and stairs; occasional climb ladders, ropes, or scaffolds; occasional balance, stoop, crouch, kneel, crawl; able to perform simple, repetitive, routine tasks; able to perform a low stress job, defined as having only occasional decision making required and only occasional changes in the work setting; no interaction with the public and only occasional, superficial interaction with coworkers and supervisors. *Id.* at 22. At step four, the ALJ determined Mawk is unable to perform any of her past relevant work. *Id.* at 30.

---

[3] Because the Court finds that remand is warranted on the mental impairments alone, the Court limits its discussion to the mental impairments Listings that the ALJ considered. The listings the ALJ considered Mawk's mental impairments under were Listings 12.04 and 12.06.

6

At step five, the ALJ found that considering Mawk's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, thus she is not disabled for purposes of the Act from her alleged onset date through the date of the ALJ's decision. *Id.* at 31.

## II. STANDARD OF REVIEW

Under the Act, a claimant may be entitled to SSI only after she establishes that she is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets

7

the twelve-month durational requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then her RFC will be assessed and used for the fourth and fifth steps. RFC is the "maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work in the relevant economy, given her RFC and considering her age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if she can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Section 405(g) of the Act gives the court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462

(7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold the ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III.  DISCUSSION

Mawk raises three issues in her appeal that she alleges constitute reversible error. ([Filing No. 15 at 4](#).) First, she argues that the ALJ failed to properly address her limitations in concentration, persistence or pace, or severe daytime fatigue in the hypothetical questions to the vocational expert ("VE") or in the adopted RFC, despite having found Mawk to be moderately limited in this respect. Second, she argues the ALJ made repeated errors regarding her interpretation of medical evidence by playing doctor and making her own independent medical findings. Finally, Mawk argues that the ALJ failed to properly address Social Security Ruling ("SSR") 96-7p and ignored evidence supportive of Mawk's subjective symptoms. The Court will address each argument in turn.

**A.   ALJ's Failure to properly address Mawk's limitations in maintaining concentration, persistence or pace**

Mawk argues that the ALJ concluded that she suffers from moderate limitations in concentration, persistence and pace, but that the hypothetical questions to the VE did not

adequately account for her temperamental deficiencies and limitations in concentration, persistence, and pace. ([Filing No. 15 at 17](Filing No. 15 at 17).) Mawk relies on Seventh Circuit precedent in *O'Connor-Spinner and Yurt* when arguing that the issue requires remand. Relying on *Gillespie v. Colvin,* No. 1:14-cv-00356, 2016 WL 5746321, at *3-4 (N.D. Oct. 4, 2016), the Commissioner responds that moderate limitations in concentration, persistence, or pace do not automatically establish that a claimant cannot satisfactorily function to perform available jobs.

"In most cases, however, employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration of those positions that present significant problems of concentration, persistence and pace." *O'Connor-Spinner v. Astrue,* 627 F.3d 614, 620 (7th Cir. 2010) (citing *Stewart v. Astrue,* 561 F.3d 679, 684-85 (7th Cir. 2009) (limiting hypothetical to simple, routine tasks did not account for limitations of concentration, persistence and pace). "But we have repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Yurt v. Colvin,* 758 F.3d 850 at 858-59 (7th Cir. 2014). "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620 (citing *Stewart*, 561 F.3d at 684-85; *Craft*, 539 F.3d at 677; *Kasarsky*, 335 F.3d at 544; *see also* Social Security Ruling 85-15 (1985) ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job.")).

The ALJ specifically noted that she accommodated Mawk's difficulty maintaining attention concentration by limiting her to work involving *simple, repetitive, routine tasks.* ([Filing No. 13-2 at 27](#).) As noted previously, the Seventh Circuit has repeatedly rejected the notion that limiting claimants to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations. Furthermore, the VE testified that a person who was off-task twenty percent of the time (in addition to regularly scheduled breaks) could not maintain competitive employment. ([Filing No. 13-2 at 66](#).) The Court agrees with Mawk that simple, repetitive, routine tasks would not account for Mawk's limitations to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, and to work in coordination with others without being distracted by them. Both Dr. McCoy and Childress opined that Mawk had either moderate or extreme limitations maintaining concentration, persistence, or pace due to her ADHD, depression, and other mental impairments. Both also opined that Mawk would have difficulty maintaining attention for even two hours. However, the ALJ misinterpreted Dr. McCoy's opinion (in an important way) in that Dr. McCoy opined that Mawk would have trouble maintaining attention and concentration for *more than* two hours at a time. ([Filing No. 13-2 at 28](#).) The record indicates that Dr. McCoy, in fact, opined that Mawk's depression and attention problems may interfere with her ability to attend to a simple, repetitive task continuously for a two-hour period. Finally, the Commissioner notes that both Drs. Neville and Larsen opined that Mawk did not suffer from significant inattention or distractibility, as somehow supporting the ALJ's flawed RFC. ([Filing No. 16 at 9](#).) However, the ALJ assigned their opinions little weight, thus this argument is unavailing to save the ALJ's failure to account for Mawk's limitations in concentration, persistence, or pace in her RFC.

The ALJ also failed to address Mawk's testimony that she takes a three to four hour nap on a daily basis. In *Allensworth v. Colvin,* the Seventh Circuit noted that hypersomnia (an ailment alleged by Mawk, but unaddressed by the ALJ) is a major ailment that would make it difficult to engage in gainful employment. 814 F. 3d 831, 834 (7th Cir. 2016). "The judge mentioned that she was restricting the plaintiff to simple work because of his sleep apnea, but did not explain why someone with hypersomnia should be able to stay awake at work just because it's simple work." *Id.* at 835 (holding that jobs that require simple, routine work are irrelevant jobs if the plaintiff's ailments cause him to fall asleep during the workday or miss four or more days of work per month).

The hypothetical question to the VE "must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record." *Herron,* 19 F.3d at 337. The ALJ is not qualified to make a vocational determination that limiting someone to unskilled work will adequately account for issues with sustained attention and concentration, which is the case presented by Mawk's ADHD and bipolar diagnoses. Remand is warranted on this issue because the ALJ failed to present Mawk's limitations regarding her concentration, persistence, or pace to the VE.

**B.    ALJ's Mishandling of Evidence**

Mawk contends that the ALJ mishandled multiple pieces of evidence. The Court limits its discussion to Mawk's contentions regarding her evidence relating to her mental conditions. Again, she renews the misinterpretation of Dr. McCoy's opinion. Mawk further explains that the ALJ misread and cherry-picked evidence from Mawk's therapist, Childress. The ALJ assigned little weight to Childress' opinion who the ALJ misreported only saw Mawk on two occasions. ([Filing No. 13-2](#).) The evidence reveals that Childress saw Mawk consistently, every week for individual therapy and, additionally, for medication management and psychiatric care, during the time that

she was under Childress' care – a period of almost a year before the ALJ's decision. ([Filing No. 15 at 22](#).) The Commissioner concedes to the errors regarding the ALJ's misrepresentations regarding the medical evidence from Dr. McCoy and Childress, but nevertheless argues that the errors were harmless because neither opinion was entitled to controlling weight. ([Filing No. 16 at 13](#), 15.) Even considering that argument, it remains difficult to determine the basis for the ALJ's opinion regarding Mawk's mental impairments (other than the ALJ impermissibly playing doctor). The ALJ assigned little weight to medical evidence supporting Mawk's disabling mental symptoms, and she also assigned little weight to medical evidence from state agency psychologists that Mawk had only mild mental restrictions. The ALJ failed to build a logical bridge as to how she determined that Mawk had moderate mental limitations when she assigned very little weight to opposing medical opinions. "But an administrative agency's decision cannot be upheld when the reasoning process employed by the decision maker exhibits deep logical flaws." *Carradine v. Barnhart,* 360 F.3d 751, 756 (7th Cir. 2004).

The ALJ's mischaracterization that Childress saw Mawk on only two occasions and that Mawk's response to treatment on those two occasions had been "satisfactory" is fatal to the Commissioner's contentions. ([Filing No. 13-2 at 29](#).) "A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days." *Larson v. Astrue,* 615 F.3d 744, 751 (7th Cir. 2010). Not only did the ALJ mischaracterize the amount of time Childress saw Mawk, the ALJ also cherry-picked evidence that Mawk reported on two occasions that her response was "satisfactory". Other notes from Childress, not acknowledged by the ALJ, indicate that even after some improvement while on medication, Mawk is still irritable, quickly fatigued, and that by the next visit she was reporting that she had daily crying spells, severe anger outbursts, and was very anxious and more

moody. (Filing No. 13-14 at 60.) Moreover, the ALJ's finding that Childress' opinion was inconsistent with the medical record, which, as noted by the ALJ, "shows Mawk was treated conservatively with medication and therapy" was patently wrong. (Filing No. 13-2 at 29.) The medical record reveals that Mawk attended individual therapy for several hours a week, group therapy for up to three hours a week, psychiatric medication which is sometimes adjusted dependent on Mawk's moods, which is far from a conservative treatment plan for a mental illness (Filing No. 13-5 at 4-5; Filing No. 13-14 at 73). With the amount of therapy alone that Mawk's care plan entailed, it would be hard to find that she could work a 40-hour work week. Finally, the VE also testified that a person who needed to be absent from work four times a month (as the medical evidence shows Mawk would need to be) would not be able to sustain competitive employment. (Filing No. 13-2 at 65.) Remand is warranted on this issue.

**C.     Credibility Determination**

SSR 96-7p requires an ALJ to evaluate a claimant's symptoms or degree of limitations, *i.e.,* intensity, persistence, or limiting effects that are consistent with the medical evidence or the ALJ's own observations. The factors that the ALJ must consider when assessing the credibility of a claimant's statements include the claimant's daily activities; the location, duration, frequency and intensity of the claimant's symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes to alleviate the symptoms; any measures other than treatment the claimant uses or has used to relieve symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to symptoms. SSR 96-7p; 20 C.F.R. § 404.1529(c)(3). Because credibility is largely a factual determination, and because the ALJ is able to perceive witness testimony firsthand, the court will not upset credibility determinations so long as there is some support in the record and the ALJ is

not "patently wrong." *Herron,* 19 F.3d at 335; *see Prochaska v. Barnhart,* 454 F.3d 731, 738 (7th Cir. 2006) (credibility findings are afforded "considerable deference" and can only be overturned if they are unreasonable or unsupported). "When assessing an ALJ's credibility determination, [the court does not] undertake a *de novo* review of the medical evidence that was presented to the ALJ. Instead, [the court] merely examine[s] whether the ALJ's determination was reasoned and supported." *Elder v. Astrue,* 529 F.3d 408, 413. "Though an ALJ's credibility determination may only be overturned if it is 'patently wrong,' a failure to adequately explain his or her credibility finding by discussing specific reasons supported by the record is grounds for reversal." *Minnick v. Colvin,* 775 F.3d 929, 937 (7th Cir. 2015) (citations omitted).

Mawk argues that remand is warranted because the ALJ gave the testimony of her mother, Della Mawk, little weight because she is not an "acceptable medical source". However, Della Mawk provided testimony in the form of a "Function Report" which the ALJ considered under the appropriate rule SSR 96-7p. The ALJ also considered and partially credited Mawk's allegations of severe pain and mental health symptoms; and importantly, explained in detail the reasons for her credibility determination. For example, the ALJ considered evidence that Mawk's mood and energy improved with medication, and reasonably found that Mawk's ability to manage her mother's property suggested that her physical and mental limitations were not as severe as she alleged. In addition, the ALJ noted that Mawk adopted a young child, which the ALJ found suggested she was capable of understanding instructions and filling out paperwork ([Filing No. 13-2 at 21](Filing No. 13-2 at 21).) Because the ALJ is "in the best position to determine a witness's truthfulness and forthrightness," a reviewing court "will not overturn an ALJ's credibility determination unless it is patently wrong." *Shideler v. Astrue*, 688 F.3d 306, 310-11(7th Cir. 2012). The Court finds no patently wrong error that would warrant remand on the ALJ's credibility determination.

## IV. CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **REMANDED** for further proceedings consistent with this Entry as authorized by Sentence Four of 42 U.S.C. § 405(g).

**SO ORDERED.**

Date: 3/31/2018

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Charles D. Hankey
HANKEY LAW OFFICE
charleshankey@hankeylawoffice.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov